**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PTA-FLA, Inc., a Florida corporation,

        Plaintiff,

vs.                                    Case No. 3:11-cv-510-J-32JRK

ZTE USA, Inc., a New Jersey corporation,

        Defendant.

## ORDER

Plaintiff, PTA-FLA, Inc. ("PTA"), filed this breach of contract case against Defendant, ZTE USA, Inc. ("ZTE") in the Fourth Judicial Circuit Court, in and for Duval County, Florida. (Doc. 2). ZTE removed the action to the United States District Court for the Middle District of Florida (Doc. 1) and then filed a Motion to Compel Arbitration[1], arguing that the parties' contract requires that their disputes be arbitrated[2]. (Doc. 7). PTA filed a memorandum in opposition (Doc. 11) and ZTE filed a reply. (Doc. 14).

## I. STANDARD OF REVIEW

Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Robert Half Int'l, Inc. v.. Thompson, 1999 WL 138849, at *1 (N.D. Ill. Mar. 5, 1999) (citing Evans v.

---

[1] ZTE's motion includes a motion for stay of the case and a request for an enlargement of time to respond to PTA's amended complaint. In an earlier Order, the Court granted ZTE's motion for enlargement of time to the extent that ZTE was relieved from responding to the amended complaint until further Order. (Doc. 9).

[2] PTA does not assert that ZTE has waived its right to compel arbitration by removing the case to federal court.

Hudson Coal Co., 165 F.2d 970, 972 (3d Cir. 1948)). Such motions come in two varieties: factual attacks and facial attacks. A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). Courts have deemed a motion seeking to compel arbitration as a factual attack as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims. See e.g., Reineke v. Circuit City Stores, Inc., 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). While no "presumptive truthfulness" attaches to the plaintiff's allegations in the context of a factual challenge, Lawrence, 919 F.2d at 1529, here the parties have only presented the allegations of the Amended Complaint, which includes the Master Supply Agreement ("Agreement"); thus, the Court will view them both as "true" for purposes of determining the arbitration issue.

## II. FACTUAL BACKGROUND

On or about September 21, 2006, PTA entered into an Agreement with ZTE "for the purchase of telecommunications products and related services for use in the Jacksonville, Florida area." (Am. Compl. (Doc. 2) at 3). Paragraph 20 of the Agreement, titled "Governing Law and Binding Arbitration," provides, in pertinent part, that

> Should any dispute, claim or controversy occur between the parties arising out of or related to this Agreement, one party may give written notice of the dispute to the other party. The parties shall then, in the first instance, attempt to resolve such dispute or controversy in good faith by senior level negotiations between the parties without attorneys present with a view to resolving the

>   dispute within a period of fifteen (15) business days from the day notice of the dispute was given (the "Resolution Period").  Such negotiations shall include a personal meeting of at least four (4) hours duration attended by the senior U.S. executive of each of the parties.  If the parties are unable to resolve the dispute within the Resolution Period, either party may, within ten (10) business days after the end of the Resolution Period, initiate an arbitration proceeding which shall be administered by the International Centre for Dispute Resolution of the American Arbitration Association."

(Id. at 23).

Immediately after ZTE delivered the telecommunications products to PTA, PTA discovered that "the products had some functionality, but were not fully operational or conforming goods."  (Id. at 3).  "Throughout the deployment[,] [PTA] notified ZTE of the numerous issues with the [p]roducts[,] and ZTE assured [PTA] that it would remedy the defects.  (Id.).  PTA alleges that ZTE "not only failed to remedy the defects, but on many occasions made attempted fixes in the  middle of operating periods instead of the nighttime maintenance window when customers would be least affected."  (Id. at 3-4).

PTA continued to notify ZTE of the product defects and ZTE continued to assure PTA that it would remedy all defects.  (Id. at 4-7).  "As a result of ZTE's failure to live up to its promises to provide conf[o]rming goods and fulfill its obligations under the Agreement, on April 16, 2010, [PTA] requested a meeting with the senior U.S. executive of ZTE as required by the dispute resolution provision in the Agreement."  (Id. at 7).  PTA alleges that two meetings occurred, but that neither were in compliance with paragraph 20 of the Agreement. (Id.).  Among other alleged non-compliance issues, the first meeting was not with a senior executive, as called for in the Agreement, "but rather with the salesperson on ZTE's account."  (Id.).  The second meeting was with a ZTE senior executive, but "contrary to the

language in the Agreement, this [executive] showed up with legal counsel."  (Id.).

"To date, ZTE has refused to have a meeting in compliance with the Agreement, has refused to cure the defective products, and has refused to refund any of the $3,600,000.00 [PTA] paid." (Id.).  As a result, PTA filed a four-count complaint alleging breach of warranty, breach of covenant of good faith and fair dealing, rescission, and fraud in the inducement. (Id. at 8-11).  ZTE then filed a Motion to Compel Arbitration and for Stay of the Case pending arbitration.  (Doc. 7).

### III. DISCUSSION

PTA alleges that ZTE has failed to satisfy an essential condition precedent to arbitration[3], and therefore ZTE is not entitled to compel arbitration.  (Doc. 11 at 7).  PTA argues that this Court must determine whether ZTE complied with paragraph 20's meeting requirements.  (Id. at 14).  ZTE, however, argues that satisfaction of a condition precedent to arbitration is an issue for the arbitrator to decide. (Doc. 7 at 9).

In reviewing an arbitration issue, the Supreme Court has stated that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (internal quotation marks omitted) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964) (holding that an arbitrator should decide whether the

---

[3] PTA states that "In this case, Section 20 of the Agreement, prepared by [ZTE], set forth a clear condition precedent to arbitration, with very specific requirements: a senior level in person meeting between each side's top U.S. executive for a minimum of four hours, without attorneys present, to take place within fifteen days of a party's notice. The language of Section 20, which was prepared by [ZTE], leaves no doubt that the required meeting is a condition precedent." (Doc. 11 at 10).

first two steps of a grievance procedure were completed, where these steps were prerequisites to arbitration)). The Court also stated that there is a presumption that "the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.' " Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-5 (1983)). Quoting the Revised Uniform Arbitration Act of 2000 ("RUAA"), the Court continued:

> *[an] arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled* . . . [and] in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.

Id. at 85 (emphasis added) (internal quotation marks and citations omitted). As a result, the Court held that the interpretation of the National Association of Securities Dealers' six-year time limit rule for arbitration was "a matter presumptively for the arbitrator, not for the judge." Id.

PTA, however, argues that Howsam does not control this case. (Doc. 11 at 12). PTA states that the Supreme Court's citation of the RUAA in Howsam "appears to be dicta and it does not appear that the Court intended a wholesale inclusion of all conditions precedent as 'procedural questions' for the arbitrator when it addressed the time limit issue that was within the purview of the administrative agency." (Id. at n.6). Instead, PTA argues that Kemiron, an Eleventh Circuit case decided seven months prior to Howsam, controls. (Id. at 14). In Kemiron, the court held that since neither party requested mediation, which was a condition precedent to arbitration under the parties' contract, "the arbitration provision ha[d] not been activated." Kemiron Atl., Inc. v. Aguakem Int'l, Inc., 290 F.3d 1287, 1291 (11th Cir.

5

2002). PTA also relies on HIM Portland, a First Circuit case, which discusses Kemiron, for the proposition that this Court should determine whether ZTE satisfied the condition precedent in paragraph 20. In HIM Portland, the court held that "[b]ecause neither [the plaintiff] nor [the defendant] ever attempted to mediate the dispute, [a condition precedent to arbitration], neither party [could] be compelled to submit to arbitration." HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 44 (1st Cir. 2003). PTA further notes that "the First Circuit's decision in HIM Portland, which was subsequent to Howsam, does not mention Howsam in its favorable discussion of Kemiron," thereby supporting PTA's position that Howsam does not control in this case. (Doc. 11 at 14).

However, in a more recent Eleventh Circuit decision, Howsam is discussed. In Klay, the Eleventh Circuit explained that "the Supreme Court [in Howsam] laid out the respective responsibilities of courts and arbitrators, absent an agreement to the contrary." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1107 (11th Cir. 2004). It continued by stating that the Supreme Court "[a]dopt[ed] the approach embodied in the [RUAA] . . . [and] held . . . [that] issues of procedural arbitrability, i.e., whether . . . conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." Id.

In addition, a First Circuit decision, subsequent to HIM Portland, has also followed Howsam. See Dialysis Access Ctr, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 383 (1st Cir. 2011) ("The parties disagree over whether the Arbitration Clause in fact establishes a condition precedent to arbitration requiring that the parties engage in good faith negotiations. Nevertheless, we do not have to resolve this disagreement because, assuming arguendo that the Arbitration Clause establishes such a pre-condition to arbitration, Appellants have

not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration.").

The instant case is distinguishable from both Kemiron and HIM Portland. In both of those cases, neither party invoked or "perform[ed] [any of] the steps necessary, as spelled out in the contract, to trigger arbitration." Kemiron, 290 F.3d at 1290. In this case, certain steps were in fact taken. Whether those steps satisfy the condition precedent in paragraph 20 of the Agreement is not for this Court to decide. Pursuant to Howsam, "an 'arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.' " Howsam, 537 U.S. at 85; see also Klay, 376 F.3d at 1107. Therefore, an arbitrator must determine whether ZTE satisfied the condition precedent in paragraph 20 of the Agreement.

PTA also suggests, albeit rather half-heartedly, that the Agreement's arbitration provision (which states that once prescribed informal settlement efforts fail, "either party may . . . initiate an arbitration proceeding"[4]), is permissive, not mandatory. While this construction has some appeal, there is ample authority supporting ZTE's opposing position that, notwithstanding the use of the word "may," arbitration is mandatory. Courts interpreting similar provisions generally read "may" as a choice between pursuing claims in arbitration and abandoning them altogether. See, e.g., Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 879 (4th Cir. 1996) (explaining that provision that parties "may" arbitrate once settlement efforts failed meant aggrieved party had choice to arbitrate or abandon claim); Bonnot v. Congress of Ind. Unions, Local No. 14, 331 F.2d 355, 359-60 (8th Cir.

---

[4]See Am. Compl. (Doc. 2) at 23.

1964) ("The obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration and the abandonment of its claim.").

However, most cases resorting to this construction involve arbitration provisions in collective bargaining agreements, not commercial contracts. See Austin, 78 F.3d at 321 (interpreting arbitration clause in collective bargaining agreement); Bonnot, 331 F.2d at 359 (same). But see, United States v. Bankers Ins. Co., 245 F.3d 315, 320-21 (4th Cir. 2001) (relying on Austin, 78 F.3d 875, to support holding that parties to commercial contract would have to arbitrate dispute notwithstanding "permissive phraseology" of their contract's arbitration provision). Additionally, such a reading is more convincing in a situation where a party is attempting to resist an opponent's attempt to arbitrate- - in that instance, "may" is read to give either party the right to arbitrate and, once invoked, the opposing side cannot argue that it is optional. See, e.g., Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, 422 (5th Cir. 1963)[5] (holding contract's use of "may" clearly gave either party the option to require arbitration); American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir. 1990) (rejecting efforts to stay arbitration instituted by aggrieved party once settlement negotiations failed where contract stated unresolved disputes "may" be arbitrated); Ziegler v. Knuck, 419 So.2d 818, 819-20 (Fla. 4th DCA. 1982) ("[T]he use of the [word 'may'] . . . creates in either party the right to insist upon arbitration; it creates in neither party the right to resist arbitration insisted upon by the other.").

---

[5]Under Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), decisions of the former Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit.

The circumstance here originally seemed different. PTA was suggesting what might be a logical reading of the phrase: as a dissatisfied party, it "may" choose to arbitrate, but has elected to litigate instead. Nonetheless, even if the Court were to agree with this construction (which seems to be a minority view[6] and would be contrary to the maxim to interpret ambiguities in favor of arbitration[7]), the right to arbitrate does belong to both parties and even if PTA was not invoking it, ZTE now is. See Conax Florida Corp. v . Astrium Ltd., 499 F.Supp. 2d 1287, 1298 (M.D. Fla. 2007) (staying case and compelling arbitration where defendant initiated arbitration after plaintiff attempted to resolve dispute in court). Whether ZTE has done so in conformity with the conditions precedent is, as explained above, a procedural question for the arbitrator. See PTA-FLA, Inc. v. ZTE USA, Inc., Case No. 3:11-cv-1605-CMC (D.S.C. Oct. 3, 2011) (rejecting PTA's argument that the use of "may" meant arbitration was optional, and leaving it for arbitrator to determine if ZTE's invocation of arbitration was timely) (cited to this Court as supplemental authority, see Doc. 19).[8]

---

[6]See American Italian Pasta, 914 F.2d at 1104-06 (Gibson, J., dissenting) (questioning whether the interpretation of arbitration provisions in collective bargaining and other labor agreements is analogous to the interpretation of similar clauses in commercial contracts).

[7]See, e.g., Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.").

[8]To the extent the parties can resolve their various disputes at one time, in one forum, they are strongly encouraged to do so.

Accordingly, for the reasons stated, it is hereby

**ORDERED**:

1.   Defendant's Motion to Compel Arbitration and For Stay of the Case (Doc. 7) is **GRANTED.**

2.   The parties shall submit to arbitration as set forth in paragraph 20 of the Master Supply Agreement.

3.   This case is **STAYED** pending the outcome of arbitration.  The Clerk shall administratively close the file, which may be reopened upon motion by either side.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of October, 2011.

_____
TIMOTHY J. CORRIGAN
United States District Judge

a/s.
Copies:

counsel of record