IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PTA-FLA, Inc., a Florida corporation, et al,

Plaintiffs

CASE NO. 3:11-CV-00510-TJC-JRK

vs.

ZTE USA, Inc., a New Jersey corporation,

Defendant.

**NTCH WEST-TENN, INC'S RESPONSE TO DEFENDANT'S MOTION TO CONFIRM FINAL AWARD IN ARBITRATION AND FOR ENTRY OF JUDGMENT**

Pursuant to this Court's Order dated December 16, 2014 (DE 58), joined party NTCH West-Tenn, Inc. ("NTCH") hereby responds to Defendant ZTE USA, Inc.'s Motion to Confirm Final Award in Arbitration. For the reasons set forth below, this Court should deny the motion and not confirm the arbitration award.

## BACKGROUND

The following facts are taken from the Complaint filed by NTCH against ZTE USA in the Western District of Tennessee, Eastern Division, C/A No. 1:11-CV-01169-JDB-egb ("NTCH Case). The Complaint ("NTCH Compl.") is attached hereto as **Exhibit 1**.

NTCH is a telecommunications provider with its principal place of business in Jackson, Tennessee. *See* NTCH Compl. ¶ 1, **Ex. 1**. ZTE USA is a New Jersey corporation and the United States subsidiary of a Chinese telecommunications equipment manufacturer. *Id.* ¶¶ 2, 7.

NTCH's affiliate, PTA-FLA, purchased equipment from ZTE for use in building out a Jacksonville, Florida market ("the Equipment"). *Id.* ¶ 8. Although ZTE was new to the United

States market and had no equipment in operation in the United States, the company specifically and unequivocally represented that the Equipment would be functional and compatible with all United States standards. *Id.* ¶¶ 9. Contrary to ZTE's representations and the provisions of the applicable agreement, the Equipment did not meet United States industry or regulatory standards. *Id.* ¶¶ 11-12. As a result of these deficiencies, and ZTE's failure to promptly correct them, PTA-FLA was unable to launch a Jacksonville market as it intended and ultimately sold the market to a competitor. *Id.* ¶¶ 14-15. The competitor, however, did not want to use ZTE's Equipment and PTA-FLA was required to decommission it. *Id.* ¶ 15.

In an attempt to resolve the parties' differences without litigation, the parties agreed that PTA-FLA's affiliate, NTCH, could use the Equipment in connection with its effort to build out a market in Jackson, Tennessee. *Id.* ¶ 15. To that end, Plaintiff agreed to pay ZTE $150,000 to commission the Equipment and render it functional. *See id.* ¶ 18. ZTE promised that it could fix the problems with the Equipment and ensured that it would function correctly. *Id.* ¶¶ 17, 21, 25, 29. However, over a period of several years, ZTE could not get the Equipment to work. *Id.* ¶¶ 22. A particularly vexing problem was the lack of MMS ("picture mail") functionality, which caused Plaintiff significant business and reputational problems. *Id.* ¶¶ 22, 32-33. Finally, after years of trying unsuccessfully to render the Equipment functional, ZTE admitted that NTCH and PTA-FLA were merely a platform for experimentation in the United States market. *Id.* ¶ 22. One representative even candidly conceded that he was not surprised that the system did not function as they had never sold the system in the United States. *Id.* ¶ 23. These admissions were directly contrary to the previous assurances provided to NTCH. *Id.* ¶ 24. As a result of ZTE's wrongful conduct, NTCH suffered significant market damage. *Id.* ¶¶ 33-35.

Following this series of failed attempts to make the equipment functional, and after trying extensively to work out a solution short of litigation, NTCH filed suit against ZTE USA, Inc. in the Chancery Court of Madison County, Tennessee, alleging, among other claims, breach of contract, breach of the covenant of good faith and fair dealing, breach of warranties, violations of the Tennessee Consumer Protection Act, promissory estoppel, negligence, and fraudulent misrepresentation. *See* NTCH Complaint, **Ex. 1**.

Thereafter, ZTE USA removed the case to federal court and moved to compel arbitration. *See* NTCH Case DE 1, Notice of Removal, **Exhibit 2**; DE 8, Motion to Compel Arbitration, **Exhibit 3**. The motion was referred to Magistrate Judge Edward G. Bryant who, on September 9, 2011, issued a Report and Recommendation recommending that the Court compel arbitration. *See* NTCH Case DE 22, Report and Rec., **Exhibit 4**. NTCH objected and, on March 20, 2012, the Court rejected the Report and Recommendation and ruled that NTCH was not required to arbitrate because it was not a party to any agreement containing an arbitration clause. *See* NTCH Case DE 45, Order, **Exhibit 5**.

While awaiting said order, NTCH, its affiliates, ZTE USA, and ZTE USA's parent corporation ZTE Corp., entered into an agreement to arbitrate all of the claims between them. Although NTCH was not required to arbitrate, it saw the value of resolving its claims against ZTE and ZTE Corp. in one proceeding and was concerned about being left with no forum to pursue its claims in light of Magistrate Judge Bryant's Order. Accordingly, NTCH conceded to the arrangement, which is memorialized in a Stipulation agreement entered into between NTCH affiliate Eric Steinmann, ZTE USA, and ZTE Corp. The Stipulation Agreement attached hereto as **Exhibit 6**. Although ZTE Corp. initially participated in the arbitration, it later abrogated the agreement and refused to arbitrate. Accordingly, NTCH took the position that the agreement was

no longer valid and objected to ZTE USA's second motion to compel arbitration. *See* NTCH Case DE 51, Objection to Motion to Arbitrate, **Exhibit 7** (without all attachments).

This time, the Court agreed with ZTE USA and deferred to the arbitrator's ruling that NTCH had agreed to participate in the arbitration. *See* NTCH Case DE 100, Order to Arbitrate, **Exhibit 8**. Accordingly, over NTCH's objection, the parties proceeded to Arbitration. The claims that were finally included in the Arbitration were the claims of the ClearTalk entities (NTCH; PTA-FLA, Inc.; Daredevil, Inc.; and NTCH-WA, Inc.) against ZTE USA and Eric Steinmann's claims against ZTE USA and ZTE Corp.

On February 11, 2014, the arbitrator issued a "Final Award." A mere three hours later, ZTE USA filed a 16 page motion in the Middle district of Florida to "Reopen Case, Join Parties, and Confirm Final Award in Arbitration and Enter Final Judgment Thereon." The ClearTalk entities requested a correction of that award which ZTE USA opposed. The arbitrator granted the correction request on March 12, 2014, thereby finalizing the Award. *See* DE 52-1. On the following day, NTCH filed a Motion to Vacate Arbitration Award in the Western District of Tennessee. *See* NTCH Case DE 112-1, Memorandum in Support of Motion to Vacate, **Exhibit 9**.

On December 16, 2014, this Court ordered that NTCH West-Tenn, Inc. file its response to ZTE USA's motion to confirm and for entry of judgment. Accordingly, NTCH responds below.

## ARGUMENT

### A. This Court Does Not Have Subject Matter Jurisdiction Regarding the Dispute Between These Parties.

Although the Court concluded in its December 16 Order that it had subject matter jurisdiction because an action had originally been filed by **PTA-FLA** against ZTE USA where there was diversity of citizenship and a sufficient amount in controversy, that conclusion would seemingly and rightfully apply only to the dispute between those two parties. NTCH invites the

court's attention to the fact that NTCH did not file an action in Florida to assert any claim against ZTE USA and has taken no other step which would give this court subject matter jurisdiction over its dispute with ZTE USA.

**1. There was no agreement that a judgment could be entered upon the award.**

As the court is aware, the language of § 9 of the Federal Arbitration Act states that "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award . . . ." 9 U. S. C. § 9. "Section 9 is conspicuously optional; the first word is 'if.'" *Insurdata Mktg. Servs. v. Healthplan Servs*., 352 F. Supp. 2d 1252, 1255 (M.D. Fla. 2005)(citing *Booth v. Hume Publishing, Inc.*, 902 F.2d 925 (11th Cir. 1990)). "In short, *if the parties agree* . . . application for confirmation and judgment is available as a speedy remedy to complement the otherwise available, but more ponderous, remedy of complaint and judgment." *Id* (emphasis added). Thus, in order for ZTE USA to have properly brought a confirmation proceeding before the Court, an agreement must exist between NTCH and ZTE USA that allows the Court to enter a judgment on such.

Notably, no formal arbitration agreement, nor any contractual arbitration provision, exists between ZTE USA and NTCH. Instead, the parties memorialized the agreement to arbitrate in a Stipulation Agreement, formally entered into between Eric Steinmann and ZTE Corporation and ZTE USA, which states that "[a]ctions related to [Steinmann's] claims were previously filed in Florida, Missouri, South Carolina and Tennessee, and the parties have agreed to submit all of the claims . . . to Arbitration." **Ex. 6**, ¶ 3. The Stipulation Agreement makes no reference to the

authority of any court to enter a final judgment on the award entered in the arbitration between the parties. *See id*.

While an exception provides that explicit agreement to allow judicial confirmation an arbitration award in court is not always required to bestow jurisdiction on the courts, (*Booth*, 902 F.2d at 927 ("An explicit agreement between the parties providing for judicial confirmation of an award is not an absolute prerequisite to authority under §9 of the Federal Arbitration Act . . . to enter judgment on the award.")), this exception provided by the Eleventh Circuit is not applicable in the case at hand.

In *Booth*, the court determined that "[w]here the parties agreed that arbitration would be final and binding, and where the appellant invoked the jurisdiction of the federal court by initially filing a complaint on the underlying contract, the district court is authorized to enter judgment on the award." *Id*. Here, the Stipulation Agreement does not indicate that the arbitration award reached under same would be final and binding. *See* **Ex. 6**. Further, NTCH *never* filed a Complaint against ZTE USA in this District Court; rather, the complaint was filed in the Chancery Court of Madison County, Tennessee, and was removed by ZTE USA to the Western District of Tennessee, Eastern Division. *See* **Ex. 1**, and **Ex. 2**. Accordingly, pursuant to § 9 of the FAA, the present Court does not have subject matter jurisdiction to enter a final judgment on the Arbitration Award.

**2. There is an insufficient amount in controversy to invoke federal jurisdiction.**

The Federal Arbitration Act (FAA) does not confer subject-matter jurisdiction on the federal courts. *Baltin v. Alaron Trading Corp.*, 128 F.3d. 1466, 1471-72 (11th Cir. 1997). In order for a federal court to confirm an arbitration award, pursuant to 9 U.S.C. § 9, the court must either establish subject-matter jurisdiction through federal question jurisdiction or diversity jurisdiction. *Peebles v. Merill, Lynch, Pierce, Fenner & Smith, Inc.* 431 F.3d 1320, 1325 (11th

Cir. 2005). Here, neither party argues that this motion to confirm an arbitration award presents the court with federal question jurisdiction. Therefore, in order for the court's exercise of subject-matter jurisdiction, the requirements of 28 U.S.C. § 1332 (a)(1) must be met.

NTCH contends that the court cannot validly exercise diversity jurisdiction because the amount-in-controversy requirement is not satisfied because the arbitration award that ZTE USA seeks to confirm is $0. In determining the amount-in-controversy of a motion to confirm an arbitration award under 9 U.S.C. § 9, the Eleventh Circuit follows the "Award Approach." *Baltin*, 128 F.3d at 1472; See also *Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC*, 491 F.3d 171, 175 (4th Cir. 2007); Christopher L. Frost, *Welcome to the Jungle: Rethinking the Amount in Controversy in a Petition to Vacate an Arbitration Award Under the Federal Arbitration Act*, 32 Pepp. L. Rev. 227 (2005). Under the Award Approach, the amount-in-controversy requirement is satisfied only if the arbitration award at issue exceeds $75,000. *Id.* Here, under the Eleventh Circuit's approach, the amount-in-controversy requirement is clearly not met here because ZTE USA seeks to confirm a $0 award. Therefore, the Court does not have jurisdiction to confirm the arbitration award.

ZTE USA argues the court could validly exercise subject matter jurisdiction over its motion to confirm the arbitration award because the Court never dismissed the case after issuing its order compelling arbitration and, therefore, maintained the subject-matter jurisdiction validly exercised over the initial proceedings. The point this argument misses is that the order compelling arbitration was only with respect to PTA-FLA and ZTE USA. No other parties were subject to that order.

ZTE USA argues that differences in the procedural posture of this case distinguish it from the Eleventh Circuit's cases adopting the Award Approach. Based on these differences, ZTE USA argues that this Court should adopt the approach taken by the Fourth Circuit and by the Federal

District Court for the Southern District of Mississippi allowing the Court to maintain subject-matter jurisdiction over a motion to confirm an arbitration award where the court has already granted a motion to compel arbitration and stayed proceedings, rather than dismiss the proceedings, pending the outcome of arbitration. Again, however, ZTE USA wrongfully lumps NTCH into the action between PTA-FLA and ZTE USA. This court did not compel NTCH to arbitrate its claims.

Because NTCH did not file an action in this Court and because this Court did not issue an order compelling NTCH to arbitrate its claims, this court does not have subject matter jurisdiction over this action because the amount in controversy, under the 11th Circuit's standards, is zero. To hold otherwise would conflict with the Eleventh Circuit's adoption of the Award Approach.

**3. The Western District of Tennessee is the proper forum for hearing this dispute.**

A motion to confirm an arbitration award may be filed in either the district where the arbitration award was made or any district proper under the general venue statute. *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 198-203 (2000). Under the general venue statute, in a diversity action such as this one, venue lies "in a judicial district in which a substantial portion of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2). Since a substantial portion of the events and omissions giving rise to Steinmann's claims occurred in the Central District of California, venue is appropriate there. *See Cortez Byrd Chips*, 529 U.S. at 198-203; *Textile Unlimited, Inc. v. A.BMH and Co., Inc.*, 240 F.3d 781, 785 (9th Cir. 2001).

Despite the facts that venue is appropriate in the Western District of Tennessee and that that court had prior involvement with the dispute, ZTE USA seeks to join NTCH (but not ZTE Corp.) in the current lawsuit. To accomplish this goal, ZTE USA filed a "Motion to Reopen Case, Join Parties, and Confirm Final Award in Arbitration and Enter Final Judgment Thereon." This 16

page motion was filed a mere three hours after the original Award was issued and before the ClearTalk companies even had an opportunity to review the Award and submit their correction request to the arbitrator.

Notably, ZTE USA would not even consent to staying the motion to give the arbitrator an opportunity to rule on the correction request. This behavior smacks of gamesmanship and an apparent attempt to rush to a court that ZTE USA finds more favorable. Unlike the Sixth Circuit, the Eleventh Circuit does not recognize "manifest disregard of the law" standard for vacating an arbitration award. *See DIRECTTV, LLC v. Arndt,* 13-10011, 2013 WL 5718384 at *3 (11th Cir. Oct. 22, 2013). Moreover, the arbitrator whose rulings are being challenged is a retired Florida judge – a fact that ZTE repeatedly emphasizes in its motion. S*ee* DE 21 at 1, 2, 7, 8, 9, 11, and 12.

Accordingly, it is appropriate for this matter to be heard by in the Western District of Tennessee, or otherwise this Court should allow NTCH the benefit of applying Tennessee law.

**B. The Court Should Deny the Motion to Confirm**

Even if the court were to reach the merits of the motion to confirm, the motion should still be denied. In this regard, NTCH has filed a motion to vacate the arbitration award in the action pending in the Western District of Tennessee and hereby incorporates the arguments made there in its Memorandum in Support and the attachments thereto as though fully set forth herein, attached as **Exhibit 9**.

The FAA provides that an arbitration award should be vacated where the arbitrator so imperfectly executed his powers "that a mutual, final, and definite award upon the subject matter submitted was not made." 9. U.S.C. § 10. An award should be vacated on these grounds if "the arbitrator either failed to resolve an issue presented to him or issued an award that was so unclear

and ambiguous that the reviewing court could not engage in meaningful review." *Trademark Remodeling, Inc. v. Rhines*, No. 11-1733, 2012 WL 3239916, at *7 (D. Md. Aug. 6, 2012) (quoting *Int'l Longshoremen's Ass'n, Local No. 1624 v. Hampton Rds. Shipping*, No. 94-1838, 1995 WL 19321, at *6 (4th Cir. Jan 19, 1995)); *Scruggs Farm Nursery v. Farmers crop Is. Alliance*, No. 09-cv-79, 2010 WL 3781781, at *8 n.3 (noting that arbitrator's failure to consider the issues presented was grounds for vacating award) (D. Tenn. Sept. 21, 2010). Here, the arbitrator wholly failed to consider Plaintiff's breach of contract claim. Such omission requires vacation of the Award.

NTCH asserted a breach of contract claim with respect to ZTE's oral agreement to render equipment furnished by ZTE USA functional in Jackson, Tennessee, for which NTCH paid $150,000. This contract was referred to as the "Tennessee Agreement" and was evidenced by a purchase order which was submitted as evidence in the Arbitration. *See* NTCH Case DE 112-3, Affidavit of Sara Barnett Ex. F ("Barnett Aff."); **Ex. 9**. The arbitrator denied this claim without even considering the Tennessee Agreement. Indeed, the only contracts the arbitrator even considered were the two MSAs to which NTCH was not a party. Award at 7 ("There were only two contracts, MSAs, entered by the parties, the one for Jacksonville previously mentioned executed on September 21, 2006 and one for Missouri dated September 25, 2008."). Notably, the arbitrator did not find that the Tennessee Agreement was unenforceable; rather, he simply ignored it. *Sonic Automotive, Inc. v. Price*, No. 10-cv-382, 2011 WL 3564884 (W.D.N.C. 2011) (holding that arbitrator exceeded his authority by "failing to determine which of the individual arbitration agreements were applicable to the arbitration proceedings"); *cf Three T Nursery v. Rural Comm. Ins. Agency, Inc.*, No. 11-cv-29, 2013 WL 1623599, at *7 (E.D. Tenn. April 15, 2013) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." the award should not be vacated.).

Of additional significance here is applicable ICDR Article 27 which provides:

> 1. Awards shall be made in writing, promptly by the tribunal, and shall be final and binding on the parties. The parties undertake to carry out any such award without delay.
>
> 2. The tribunal shall state the reasons upon which the award is based, unless the parties have agreed that no reasons be given.

Barnett Aff., Ex. F; **Ex. 9**. Here, the parties did not agree that no reasons need to be given. *Id.* ¶ 7. Where an arbitrator does not adhere to a procedural requirement that he is bound to follow, the award should be vacated. *See Western Employers Ins. Co. v. Jeffries & Co., Inc.*, 958 F.2d 258, 262 (9th Cir. 1992) (vacating award where arbitrator exceeded his powers by refusing to provide findings of fact and conclusions of law as provided in the agreement); *Uhl v. Komatsu Forklift Co., Ltd.*, 466 F. Supp. 2d 899, 909 (E.D. Mich. 2006). Accordingly, the arbitrator's failure to comply with the ICDR's rules is grounds for vacating the award with respect to NTCH's breach of contract claims.

## CONCLUSION

Based on the foregoing, NTCH respectfully requests that this Court find that it does not have subject matter jurisdiction and, even if it finds that it does, deny the motion to confirm for the reasons stated above.

Respectfully submitted,

**BAGGETT LAW**

s/Matthew B. Baggett
MATTHEW B. BAGGETT
Florida Bar No.: 0015896
1539 San Marco Boulevard
Jacksonville, Florida 32207
(904) 396.1100 (Phone)
(904) 404.8346 (Fax)
*mbb@baggettlaw.com*
*cnp@baggettlaw.com*
Co-Counsel for NTCH

*and*

**SPRAGINS, BARNETT & COBB, PLC**

By: /s/ Sara E. Barnett
Charles H. Barnett, III - 008721
Sara E. Barnett - 021379
Attorneys for Plaintiff
312 East Lafayette Street
P.O. Box 2004
Jackson, Tennessee 38302
(731) 424-0461 (Phone)
*saraebarnett@spraginslaw.com*
*chbarnett@spraginslaw.com*
*donna@spraginslaw.com*
Co-Counsel for NTCH
(Pro Hac Vice Admission Pending)

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2015, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the counsel so indicated below:

Laura E. Besvinick
Matthew Bray
Hogan Lovells US LLP
Ste 2700
600 Brickell Ave
Miami, FL 33131
*laura.besvinick@HoganLovells.com*
*matthew.r.bray@hoganlovells.com*

s/Matthew B. Baggett